# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:13-CR-260** |
| v. | : | (Chief Judge Conner) |
| **TYRONE A. ATWOOD,** | : | |
| **Defendant** | : | |

## MEMORANDUM

The court sentenced defendant Tyrone A. Atwood ("Atwood") to 63 months' imprisonment for conspiracy and attempt to distribute and possession with intent to distribute cocaine. (Doc. 203). Presently before the court is Atwood's *pro se* motion (Doc. 215) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Atwood asserts that he was denied effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. The court will deny the motion.

## I. Factual Background & Procedural History

In 2012, Atwood's father and brother—defendants Rodger T. Atwood I and Rodger T. Atwood II,[1] respectively—were incarcerated in Adams County Prison. (See Doc. 231 at 15:4-7). The pair were in custody and awaiting sentencing for federal drug trafficking charges. (Id.) Atwood I and II expressed their desire to cooperate with Drug Enforcement Administration ("DEA") agents. (Id. at 15:8-9).

---

[1] The court refers to Atwood's father and brother as "Atwood I" and "Atwood II" for clarity.

Atwood's father and brother enlisted Atwood to facilitate their cooperation with the DEA. (Id. at 15:9-12).

The government sanctioned Atwood's initial participation. (See id.) However, his father and brother soon asked him to expand his assistance to include unauthorized "side deals." (Id. at 15:12-15). The authorities were unaware of these side deals until Atwood I and II contacted a fellow inmate seeking a Guatemalan source of cocaine. (Doc. 155 ¶ 8; see Doc. 231 at 15:16-17). The inmate subsequently informed authorities of this request and began working with the DEA to investigate the Atwoods. (Doc. 155 ¶ 8).

The cooperating inmate gave Atwood I and II a Maryland post office box address with instructions to send $3,150 for a cocaine purchase. (Id. ¶ 9; see Doc. 231 at 15:17-19). Atwood proceeded to send the money on behalf of his father and brother. (Doc. 155 ¶ 9; see Doc. 231 at 15:17-19). DEA agents were monitoring the post office box and seized the funds when they arrived. (Doc. 155 ¶ 9; see Doc. 231 at 15:17-19). Atwood also communicated with a government confidential source to set up meetings and discuss future buys. (Doc. 155 ¶ 11; Doc. 231 at 15:22-16:1). One such meeting occurred at the King of Prussia Mall in Philadelphia, Pennsylvania on August 19, 2013. (Doc. 155 ¶ 11; Doc. 231 at 15:22-16:1). In a series of phone calls with the confidential source after the meeting, Atwood negotiated the price and quantity for future purchases of cocaine. (Doc. 155 ¶ 12; Doc. 231 at 17:4-20).

Authorities arrested Atwood before he could make further contact with the confidential source. (Doc. 155 ¶ 17). On November 20, 2013, a grand jury returned an indictment charging Atwood in a single count with conspiracy and attempt to

distribute and possess with intent to distribute more than 500 grams of cocaine hydrochloride in violation of 21 U.S.C. § 846. (Doc. 1). Atwood retained Attorney R. Mark Thomas ("Attorney Thomas") as his counsel. (Doc. 33). On April 14, 2015, Atwood pled guilty to the indictment. (Doc. 104). The United States Probation Office subsequently prepared a presentence report, calculating a total offense level of 29 and a Guidelines range of 151 to 188 months' imprisonment. (Doc. 155 ¶ 60).

At sentencing, Attorney Thomas objected to paragraphs 38 and 39 of the report on the ground that several of Atwood's prior offenses should not count as predicate convictions for career offender classification. (Doc. 232 at 4:10-21, 5:16-20). The court sustained Attorney Thomas's objection, concluding that Atwood's 1992 drug conviction was too dated to qualify, and his escape-related conviction was not a crime of violence under the career offender Guideline. (See id. at 5:6-16, 6:16-22). The ruling reduced Atwood's offense level to 21 and his Guidelines range to 70 to 87 months. (Id. at 8:1-3). At Attorney Thomas's request, the court struck paragraphs 14 through 16 from the presentence report due to a lack of credible evidence to support the factual statements therein. (Id. at 17:15-18). The court also granted a government 5K1.1 motion for downward departure for substantial assistance. (Id. at 8:19-12:21). Atwood's resulting final offense level was 18 with a Guidelines range of 51 to 63 months. (Id. at 12:18-21).

The court considered the salient 18 U.S.C. § 3553(a) factors, including Atwood's three prior federal drug offenses, before sentencing Atwood to 63 months' imprisonment. (See id. at 18:15-19:23). Atwood timely filed the instant motion (Doc. 215) seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255

on November 2, 2016. The motion is fully briefed (Docs. 216, 225) and ripe for disposition.

## II. Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255. Courts may afford relief under § 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a); see also R. GOVERNING § 2255 CASES 1(a). The statute provides that, as a remedy for an unlawfully-imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The court accepts the truth of the defendant's allegations when reviewing a § 2255 motion unless those allegations are "clearly frivolous based on the existing record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005). A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record." United States v. Tolliver, 800 F.3d 138, 141 (3d Cir. 2015) (quoting Booth, 432 F.3d at 546).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on this claim, a petitioner must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial. See id. at 687-88. Conclusory allegations are insufficient to entitle a

4

petitioner to relief under § 2255.  See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct.  Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).  Counsel will not be deemed ineffective for failing to raise a meritless claim.  See United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that, but for counsel's errors, the outcome of the proceeding would have been different.  See Strickland, 466 U.S. at 694.  The district court need not conduct its analysis of the two prongs in a particular order or address both prongs of the inquiry if a defendant makes an insufficient showing in one.  See id. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### III. Discussion

Atwood claims that he received ineffective assistance of counsel when Attorney Thomas failed to move for a continuance of sentencing in anticipation of Amendment 794 to the Sentencing Guidelines.  (Doc. 216 at 5).  Amendment 794 promulgated a non-exhaustive factors list to guide courts in determining whether

to apply a mitigating role reduction under Guidelines § 3B1.2. U.S.S.G. app. C, amend. 794. The Sentencing Commission intended the amendment to remedy courts' sparing application of such reductions. Id. The amendment took effect on November 1, 2015—two days after Atwood's sentencing. Id. Atwood contends that Attorney Thomas should have requested a two-day continuance to avail Atwood of the amendment. (Doc. 216 at 5-6).

The Third Circuit Court of Appeals has not considered, in a precedential opinion, whether failure to move for a continuance under such circumstances constitutes ineffective assistance of counsel. In a nonprecedential opinion, the Third Circuit resolved that failure to seek a four-month continuance of sentencing to the date an amendment took effect was not ineffective assistance of counsel. United States v. Briceno-Rodriguez, 47 F. App'x 167, 169 (3d Cir. 2002).[2] The panel observed that Congress may reject amendments at any time between proposal in May and the effective date of November 1. Id. The court also emphasized that the defendant would not have qualified for the amendment even if the court had granted a continuance. Id. at 169-70.

Briceno-Rodriguez did not hold, however, that failure to request a continuance will never result in ineffective assistance. See id. And the temporal distinction between Briceno-Rodriguez and the instant matter—four months versus two days—is substantial enough to set the two cases apart. Under the appropriate

---

[2] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions herein reflect that the court has considered the panel's *ratio decidendi* and is persuaded by same.

6

circumstances, failure to seek a two-day continuance might be deemed ineffective assistance. Nonetheless, because Atwood ultimately cannot establish prejudice, we leave this inquiry for another day.

To show prejudice, Atwood must establish that he qualified for a mitigating role reduction as a minimal or minor participant in the conspiracy under Guidelines § 3B1.2. As the only participant operating outside of the prison walls and thus integral to the success of the conspiracy, Atwood clearly does not qualify for a role reduction.

Guidelines § 3B1.2 provides for a reduction in a defendant's total offense level proportionate to his or her mitigating role. U.S.S.G. § 3B1.2. A defendant who is a "minimal participant" in criminal activity is entitled to a four-level reduction in his or her offense level, and a defendant who is a "minor participant" in the activity receives a two-level reduction. Id. In cases falling between a "minimal" and "minor" role, the court should apply a three-level reduction. Id. The purpose of the Guideline is to adjust the offense level of a defendant whose role in the offense makes him or her "substantially less culpable than the average participant" in the particular criminal conduct. Id. § 3B1.2 cmt. 3(A).

The commentary to § 3B1.2 defines both "minor participant" and "minimal participant." Id. § 3B1.2 cmts. 4, 5. A "minimal participant" is an individual who is "plainly among the least culpable" of those involved in the offense conduct. Id. § 3B1.2 cmt. 4. The minimal role reduction is intended to apply to defendants with demonstrated "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." Id. By contrast, a "minor

7

participant" is an individual whose conduct is "less culpable than most other participants . . . , but whose role could not be described as minimal." Id. § 3B1.2 cmt. 5.

The Guideline's commentary emphasizes that inquiries under § 3B1.2 are "heavily dependent" on the facts of each case and require the court to examine the totality of the circumstances. Id. § 3B1.2 cmt. 3(C). The Sentencing Commission developed the factors test of Amendment 794 to guide this fact-intensive analysis of a defendant's relative culpability. Id. The factors, now part of Application Note 3(C) to § 3B1.2, are as follows:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> 
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> 
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> 
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> 
> (v) the degree to which the defendant stood to benefit from the criminal activity.

Id.

Applying this standard, Atwood's involvement would not result in a mitigating role reduction. Atwood orchestrated negotiations and phone calls with the government's confidential source on multiple occasions. (Doc. 155 ¶¶ 11-12; Doc. 231 at 15:22-16:1, 17:4-20). His father and brother merely supplied names of

8

contacts.  (See Doc. 155 ¶¶ 11-12).  Relative to his coconspirators, Atwood undertook the lion's share of preparation to set up the drug transactions in question.  (See id.)  In sum, Atwood served as the "boots on the ground" for the conspiracy, without which it could not operate.  (See Doc. 232 at 10:7-8).

Further evidence of Atwood's ineligibility for a mitigating role reduction is garnered from the court's remarks at sentencing regarding Atwood's cooperative efforts.  The court observed that the cooperation with authorities "really was in large part a team effort," and that the Atwoods' roles could not be distinguished to allow for "differentiat[ion] between the[m]."  (Doc. 232 at 10:12-17).  The Atwoods' responsibilities while cooperating with authorities remained the same for both the authorized and unauthorized activity—Atwood I and II provided the contacts, and Atwood made the phone calls and coordinated the meetings.  (Compare Doc. 155 ¶¶ 8-12 with Doc. 232 at 10:6-11).  Because the responsibilities in all dealings were the same, the court's characterization of Atwood's cooperation applies with equal force to his criminal culpability: Atwood was at least an equal participant with, if not a "more substantial" contributor than, his father and brother.  (Doc. 232 at 10:6-24).  Accordingly, Atwood is ineligible for a mitigating role reduction under Guidelines § 3B1.2—as it existed at sentencing, and as amended.  Attorney Thomas's failure to move for a continuance did not prejudice Atwood.[3]

---

[3] Atwood's argument that failure to raise these issues on appeal constitutes ineffective assistance of counsel is also meritless for the reasons set forth *supra*.

9

**IV. Conclusion**

The court will deny Atwood's motion (Doc. 215) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. An appropriate order shall issue.

       /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: September 5, 2017